CAROLINE, INFANT ETC. ET AL. *v.* REICHER ET AL.

[No. 274, September Term, 1972.]

*Decided May 21, 1973.*

126

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Franklin I. Freeman* for appellants.

*Robert K. Nead*, with whom was *Samuel S. Smalkin* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

According to the Maternal and Child Health Service of the U. S. Department of Health, Education, and Welfare, "Lead poisoning in children, resulting mostly from ingestion of chips of lead-containing paint from walls and woodwork in old, dilapidated housing, remains a unique public health problem." [1] Each year this spreading epidemic causes "the deaths of many children and mental retardation or other neurological handicap in many other children." [2] This appeal presents one such case. Here, the appellants, Dawn Caroline and her mother, who were tenants in an apartment owned and operated by appellee, Reicher Enterprises, Inc., have attempted to hold their landlord and its corporate officers, Edward and Sidney Reicher, liable for the tragic injuries Dawn suffered as a result of ingesting paint chips containing lead.

In June 1968, Brenda Caroline, Dawn's mother, rented for $75 per month an apartment located at 3000 W. North

---

[1] J. Lin-Fu, *Lead Poisoning in Children*, Public Health Service Publication # 2108-1970 (1970). See also Annot., *Landlord's Liability — Lead Poisoning* 43 A.L.R.3d 1268 (1972); J. Lin-Fu, *Childhood Lead Poisoning . . . an eradicable disease*, CHILDREN, Vol. 17, No. 1, p. 2-9 (Jan.-Feb. 1970).

[2] *Lead Poisoning in Children, supra* at 1.

Avenue, Baltimore City, Maryland, from Reicher Enterprises, Inc., one of the appellees. Shortly thereafter, Miss Caroline moved into the apartment with her three daughters — Dawn, then one year old, her older sister Kimberly and younger sister Crystal. The family continued to reside at that address until September 1969. At the trial in this case, Miss Caroline testified that prior to renting the apartment she made an inspection tour of the dwelling and found the place to be in poor condition — in need of painting and wallpapering. She stated that throughout the dwelling the paint was "chipped and cracking and peeling." Nevertheless, she says she decided to rent it because Mr. Edward Reicher promised to paint and fix up the apartment after she moved into it. Some time during the fifteen months the Carolines occupied this apartment, Dawn became listless, lost her appetite and began to cry for long periods of time. In the summer of 1969, when these symptoms persisted, Miss Caroline had her daughter examined at University Hospital; but, because her ailments were attributed to jealousy of her younger sister, she was sent home without any treatment. A short time later, Dawn suffered convulsions and was hospitalized. At this time the seriousness of her illness was unmistakable and was diagnosed as lead poisoning. As a result of this poisoning the young child suffered permanent blindness, retardation, and other neurological handicaps.

Due to these injuries, appellants filed this suit in the Court of Common Pleas of Baltimore City against the corporate owner of the apartment property, Reicher Enterprises, Inc. and its corporate officers, Edward and Sidney Reicher. At the instance of the appellees, the case was later removed to the Circuit Court for Montgomery County for a jury trial. The declaration alleges that Dawn and her mother moved

"into the apartment as their place of residence; that both before and after the time the infant Plaintiff and her said mother moved into and began to reside in the apartment, the said Defendants individually and/or severally had either caused or allowed the

continued existence of its interior and exterior walls and woodwork and the first floor exterior side door and frame to be painted with paint containing lead pigment thereby rendering the apartment unsafe and dangerous and unfit for human habitation, especially for a child of tender years, and, during the time the infant Plaintiff resided in the apartment owned by the Defendants, she ingested and consumed paint containing lead and lead pigment thereby causing the infant Plaintiff to suffer [her] injuries, illnesses, and infirmities."

At the close of the plaintiffs' case, Judge H. Ralph Miller directed verdicts in favor of the two individual defendants, Edward and Sidney Reicher; but denied a similar request as to the corporate defendant. At the close of all the evidence, Judge Miller submitted the case to the jury on the issue of the corporate defendant's liability. The jury returned a verdict in favor of the defendant corporation and after denying a motion for judgment n.o.v. or in the alternative a new trial, Judge Miller ordered the entry of a final judgment for the defendants. This appeal was then timely noted.

Appellees are apparently satisfied with all aspects of the trial as they did not cross appeal; however, appellants raise four contentions in hope of obtaining a reversal. First, they posit that the trial judge erred in one of his instructions to the jury when he stated that the landlord was not liable if his negligence was merely "passive and potential" while the "moving and effective cause of the injury" was the superseding negligence of the mother. Second, appellants suggest that Judge Miller erred when he refused to reinstruct the jury after its forelady asked a question about relevant sections of the Baltimore City Code and one about the law of negligence as it related to the condition of paint on the exterior of the building. Third, appellants contend that the trial judge prejudiced their case when he suggested that the jury consider damages only after determining liability and when he stated that this case required more medical testimony than the normal case to connect Dawn's illness with the landlord's negligent act. And, finally,

appellants submit that the trial court was in error when it directed a verdict in favor of one of the corporate officers. Under the view we take of this appeal, it is only necessary to discuss appellants' first and last contentions.

Appellants initially contend that Judge Miller erred when, in the course of his instructions to the jury, he stated that:

> "It is the law of this State, going into another matter, that negligence on the part of a parent or custodian of an infant shall not be imputed to the infant to bar him or her from her claim for damages from the mere fact of such parenthood or custodianship; however, the Court instructs the jury, that if you find the injury might not have happened to the infant plaintiff, but for an antecedent act of the defendant, the defendant is not liable if his negligence was merely passive and potential, when the negligence of another, such as the mother, is the moving and effective cause of the injury."

And, appellants say that the trial judge compounded this error when, following an objection, he expanded the instruction as follows:

> "I told you a little bit about the fact that it is the law in this State that any negligence on the part of the parent cannot be imputed to the infant, just from the fact that that is the parent; and then I went on to say that the Court instructs you that if you find that the injury might not have happened to the infant Plaintiff, but for an antecedent act of the Defendant, the Defendant is not liable if its negligence was merely passive and potential, when the negligence of another, such as the mother, is the moving and effective cause.
>
> Now, what that means in essence is that if the Defendant is clearly negligent, and the mother was somewhat negligent, too, of course, you could not bar the child's recovery.
>
> You could only bar the child's recovery if the

mother's negligence was the principal thing that brought about this injury.

Now, that would be true even though the Defendant had committed some violation, if you found that that was not the real cause, that it was really the mother's, that is the only way you could bar the recovery of this Plaintiff, of the infant, that, of course, taking into consideration all the Court's instructions, previously given you.

Now, of course, an infant child of this age can not be guilty of negligence herself. You are not to consider that at all."

The basis of the appellants' objection was that there was not sufficient evidence in the case to warrant an instruction that the negligence of the mother could be considered as a superseding cause so as to relieve the landlord of liability. Appellants argue that, while the instruction correctly states under Maryland Code (1957, 1969 Repl. Vol.), Art. 75, § 2, that the negligence of the parent cannot be imputed to the child, nevertheless, it erroneously permits this when it allows the jury to consider the question of the mother's superseding negligence.

That Code section, which prohibits the imputation of a parent's negligence to a child, changed the law of this State. Prior to its enactment in 1956, the rule in Maryland was that: "If the child be so young as not to be able to take care of itself, then parental neglect, resulting in injury, may be imputed to the child." *Graham v. Western Md. Dairy,* 198 Md. 210, 81 A. 2d 457 (1951). While we do not think that Art. 75, § 2 relieves a parent of a child of tender years from all supervision over such child, we do think that, if that section is to have any meaning, it is only in the somewhat extraordinary situation where the parent's negligence is such as to constitute an independent and superseding cause of the child's injuries, that the dormant negligent act of another is discharged. *Katz v. Holsinger,* 264 Md. 307, 286 A. 2d 115 (1972); *Farley v. Yerman,* 231 Md. 444, 190 A. 2d 773 (1963); *Barnes v. Housing Authority,* 231 Md. 147, 189 A. 2d 100 (1963).

Under the evidence here, as a matter of law, we do not think that the actions of the mother were such as to be a superseding negligent cause. And, we will not permit this attempted end run around the provisions of Art. 75, § 2 to succeed. We recognize that a determination of whether the intervening act of a third person is a superseding cause which discharges the original actor from liability may be a question for the trier of fact. But, when the evidence presented and the logical inferences deducible therefrom admit of but one conclusion, the question becomes one of law. *Katz v. Holsinger, supra; Farley v. Yerman, supra.* It is true that the facts of a case may place it in the middleground where the issue of the existence of superseding negligence is properly left for the trier of fact; but, some cases are such that they gravitate so close to one or the other of the two poles that resolution of the issue becomes one of law. In *Katz* and *Farley,* cases factually analogous to the one here and presenting identical legal problems, we considered this issue. As we think what we said there is applicable here and those cases are dispositive of this one, we will discuss them at some length.

In *Farley,* a four year old child of a tenant sustained serious injuries when she was burned by flames from a gas log located on the premises rented from the landlord-defendant. This Court reversed the judgment in favor of the defendant directed by the trial court, and remanded the case for a new trial. The evidence there showed that the furnace in the apartment was defective and did not furnish sufficient heat. There was a gas log which projected about 6 inches into the living room from a shallow fireplace. The landlord told the plaintiffs to use the log when needed to supplement the furnace and showed them how to use it. On various occasions the landlord was advised of the danger this posed, as the plaintiffs had four small children; and, while he promised to buy a screen for the fireplace, he did not. The plaintiffs could not afford to buy one themselves. One cold December day the log was lit and the mother and her daughter were looking out the window. Suddenly, the 4 year old turned and ran across the room in

front of the log. The flames whipped out and ignited the child's dress.

In *Farley, supra* at 448-50, Judge Hammond stated for the Court that:

"The landlord argues that . . . his failure to provide the screen was not a proximate cause of the accident. He urges that his negligence, if there was any, was merely passive and potential, while the failures of the father and mother to make physical arrangements which would prevent access to the flames or to keep their children far enough from them to prevent injury were independent, moving and effective causes of the harm which made their negligence the only proximate cause of the injury they complain of. He cites *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 389, for the proposition that intermediate, self-operating causes produced the injury and that the connection between his alleged negligence and the injury was broken by the intervening, immediate acts or omissions of the parents, which he had no reason to anticipate and over which he had no control.

We think the rule urged upon us is not applicable here. The landlord not only knew of the danger in the abstract but in the context of the almost continual presence of the very young children in close proximity to the danger. He cannot disclaim realization that the parents might not be able to do more than they did, or that they would not do more, or that their acting as they did was not to be deemed so unusual or extraordinary as to be unreasonable or, finally, that the foreseeable acts or omissions of the parents would be but normal responses to a situation created by his own conduct.

All this being so, any negligence of the parents was not a superseding cause of the harm which the landlord's negligent conduct was a substantial factor in bringing about. *Restatement, Torts,* Sec. 447. See also Sec. 452.

This Court has recognized and applied the rule of the *Restatement* many times. *Jubb v. Ford,* 221 Md. 507, 513, pointed out that unless the facts admit of but one inference [as they do here insofar as concerns the conduct of the parents constituting a superseding cause of the injury], the determination of proximate cause, like that of negligence, 'that is, the determination of whether what occurred reasonably was to have been anticipated as a result of, or was induced by, the defendant's acts or omissions,' is for the jury." [3]

In *Katz,* a jury awarded a verdict to a young girl and her mother, tenants of the defendants, for injuries the child received when she fell through a hole in the porch railing to the pavement below. There, as in *Farley,* the landlords contended that their failure to repair the railing was not a proximate cause of the accident on the theory that the mother's allegedly negligent failure to prevent the child from going out on the porch — although not imputed to the child — was so extraordinary as to constitute a superseding cause of the injuries. Relying on and quoting extensively from *Farley,* we rejected this argument. This Court, speaking through Judge Barnes, repudiated the suggestion that there was legally sufficient evidence to permit a finding that the

---

**3.** 2 *Restatement of Torts* 2d, § 447, entitled "Negligence of Intervening Acts" states that the fact that an intervening act of a third person is negligent does not make it a superseding cause of harm to another which the actor's negligence is a substantial factor in bringing about, if:

> "(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Section 452 deals with a "Third Person's Failure to Prevent Harm."

It is obvious, in light of the case law relied on in Farley and the references there to these *Restatement* sections, that this Court found that the rule of superseding negligence, as it related to the conduct of the parents, was, as a matter of law, inapplicable in that case. This is so because the facts adduced at that trial and the legal inferences deducible therefrom did not rise to the level of presenting a jury question.

conduct of the parents was a superseding cause and pointed out that:

> "the landlords not only knew that the balusters were missing and of the *theoretical danger* involved in this defective condition, but Mr. Katz — one of the landlords — was specifically warned of the *actual danger* to the two year old infant Zella prior to the accident. He must necessarily have realized that a parent cannot watch an active infant every moment and that in an instant she might leave her mother, go on the porch contrary to the mother's instructions and fall through the open hole in the porch railing. The acts or omissions of the mother in the instant case were not 'so unusual or extraordinary as to be unreasonable' and the foreseeable acts or omissions by the mother 'would be but the normal responses' to a situation created by the failure of the landlords to repair the porch railing." *Katz v. Holsinger, supra* at 314-15.

Here, as in *Katz* and *Farley*, we conclude that, as a matter of law, the evidence did not permit the granting of the instruction submitting to the jury the question of the effect of any negligence by the mother on the liability of the landlord. The uncontradicted testimony of Dr. James Julian Chisolm, a pediatrician and expert on lead poisoning in children, as well as Dawn's treating physician for two years, was that the severity of this poisoning was such that Dawn probably ingested paint chips about the size of a nickel or quarter on the average of two to three times a week for at least three months and probably for as long as a year (August 1968 to August 1969), with the main ingestion occurring during the last six months of that period. (It should be remembered that the Carolines occupied this apartment from June 1968 to September 1969.) Dr. Chisolm also described a phenomenon found in young children known as "pica." This habit, defined as the eating of non-food substances, is present in approximately fifty percent of the children between the ages of about one and three. Scientific studies indicate that usually this ingestion is done covertly

by the child and is unobserved by the parent. According to this expert witness, "the vast majority of actual instances of ingestion are not seen" and, one study places the figure of non-observance as high as ninety percent of the time.

Brenda Caroline, Dawn's mother, testified that she never left this child unsupervised. As she did not work she was usually at home with the children; but, when she was not, either Mrs. Loften, Dawn's grandmother, Edward Caroline, the mother's brother, or Linda Haynie, the mother's girl friend, would stay with them. This witness also stated that she would "sweep up paint chips off the floor every day." But, despite these efforts, she recalled seeing Dawn with paint chips in her mouth on two occasions. Miss Caroline disavowed any knowledge about the danger of lead paint poisoning prior to her child's illness.

In closing this portion of our opinion, we think the words of the Court of Appeals of Louisiana, in *Davis v. Royal-Globe Insurance Companies*, 223 So. 2d 912, 918-19, *rev'd on other grounds*, 242 So. 2d 839 (1970); *cert. denied* 403 U. S. 911, 91 S. Ct. 2205, 29 L. Ed. 688 (1971), a lead paint poisoning case with facts and issues remarkably similar to the one here, are appropriate:

> "The question has been raised in our minds about the actions of Pauline Davis herself in this matter, since after all it is admitted and indeed alleged by her that her small children ate paint flakes many times over a four or five month period. Indeed it could be argued that while the children themselves could not be guilty of contributory negligence, nevertheless Pauline Davis herself as their mother and guardian was negligent in not keeping a proper watch over her children, and it was her negligence which was the cause of their injuries. We realize that the contributory negligence of the parent cannot be imputed to the minors so as to defeat their recovery. . . . *[H]owever we can envision a situation where it is the superceding negligence of the parent in failing to keep a proper lookout for the child's wellbeing which is the actual proximate cause of the child's injury.*

*In any event we are satisfied that such was not the case herein.* Pauline Davis testified as seen above that each time she noticed her children eating the paint flakes she stopped them from doing so by spanking their hands and instructing them not to do so again. Naturally being small children they persisted whenever her back was turned. Further she stated that whenever she noticed paint flakes on the floor she swept them up. She complained to the apartment manager on several occasions and even asked if she could buy paint herself and correct the condition. The record establishes she was a woman of meager means and education, yet she did everything she could to prevent the situation from continuing except moving from the apartment, which we must assume she would have done had she been aware of the serious nature of the consequences to her children. Unfortunately for them, however, the lead poisoning was not evident to their own doctor until the damage had been done, and it was then that the Davis family moved from the premises." (Emphasis added.)

Because there was insufficient evidence tending to establish the independent and superseding negligence of the mother, the instruction complained of was erroneously given and the case will have to be submitted to a new jury untainted by this error. Of course, at any new trial, the Carolines will still have the burden of showing that the child's injuries were proximately caused by lead poisoning and the poisoning was caused by the ingestion of lead-containing paint chips negligently permitted by the landlord to be present on its property. However, if the proof as to the actions of the mother remain as established in the record before us, they cannot authorize an instruction that they be considered as an independent superseding cause so as to discharge the landlord from any proven liability on its part.

In light of this holding, we need consider only appellants' final contention urged in this appeal — that Judge Miller

erred when he directed a verdict in favor of one of the corporate officers allegedly identified as a tortfeasor. Appellants apparently do not disagree with the directed verdict as to the other officer. However, we will not pass upon this issue, as the information "reasonably . . . necessary for the determination of the question presented" is not printed in the record extract. Rule 828 b 1 and i 2. Appellants have neither printed the motion for a directed verdict, nor the court's ruling in regard to this. The cases are legion in this Court in support of our authority not to decide issues not presented in conformity with this rule. We will only cite a few. *Salem Constr. Corp. v. Tompkins,* 259 Md. 345, 269 A. 2d 824 (1970); *McBurnie v. McBurnie,* 214 Md. 210, 134 A. 2d 78 (1957); *Schwartzmann v. Payne,* 203 Md. 256, 100 A. 2d 23 (1953). Therefore, we will permit the directed verdicts in favor of the individual corporate officers to stand.

> *Judgment in favor of Reicher Enterprises, Inc. for costs reversed and case, as it pertains to that appellee, remanded for a new trial.*
> *Judgment in favor of appellees, Edward and Sidney S. Reicher, for costs affirmed.*
> *Costs to be paid 3/4 by Reicher Enterprises, Inc. and 1/4 by appellants.*