473 A.2d 523

**Adam Frederick LASER, et al.**

v.

**Cindy Lee WILSON, et vir.**

**No. 862, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 10, 1984.

**436**

Alexander R. Martick, Baltimore, for appellants.

James P. Nolan, Annapolis, with whom were Kevin M. Schaeffer and Hartman & Crain, P.A., Annapolis, on brief, for appellees.

Argued before LOWE, WEANT and BISHOP, JJ.

LOWE, Judge.

The anticipated exuberance of a 1979 Christmas Laser family gathering abruptly ended when two-and-a-half-year-old Adam fell ten to twelve feet from an unguarded stair and landing, breaking his leg upon impact with the floor

below. Adam is the son of Frederick Laser[1] who, with his wife and two children, had been invited by Fred's sister Cindy Lee Wilson, and her husband Howard. The younger Lasers had been invited to join Fred and Cindy's father and stepmother and Howard Wilson's parents for Christmas at Cindy Wilson's home. Fred, Jr.'s family was the last to arrive and his never-too-cautious father, Fred, Sr., promptly warned his namesake son that the guard rail or banister had been removed from the stairs in his sister's split level home.

"The essence of the conversation was that I was warned of the missing guardrail and missing handrail. I said that I had noted that they were gone and that uh . . . he asked me to watch my son closely. Which I said I would do."

Notwithstanding the grandfatherly concern expressed by this parental admonition, Fred, Jr. went to the kitchen and as he "reached into the refrigerator for a drink of beer", heard the commotion and a scream heralding the anticipated accident that ensued.

Upon arriving at the Wilson home Adam's mother Judith had tended the child's needs following a two hour drive. Thereafter she took him "in to sit with his grandparents and the other guests." Judith then went to the kitchen and helped her sisters by carrying food to the basement den where a buffet-dinner was to be served. As she reached the bottom of the steps she heard a thump and Fred, Sr. scream "Oh my God, the baby." Adam was lying at the bottom of the steps.

His injury was severe, but its extent is not an issue on this appeal. Adam's father and mother, individually and in a representative capacity, have appealed the judgment entered upon a verdict directed for defendants-appellees by the trial judge at the conclusion of the case the Lasers brought

---

1. We apologize for the appearance of familiarity by use of the given names throughout the opinion. To attempt to use the surnames in this family conflict would but add to the confusion of identifying the actors.

against the Wilsons, alleging a negligent breach of a duty that appellants claim was owed by the Wilsons to Adam.

The Lasers' primary preoccupation seems to be with the judge's explanation to the jury and his colloquy with counsel in which he acknowledged that the thirty-month-old child had not been warned that the railing was missing, although the child's father had been warned. Secondly they contend (without legal authority for support) that the parents should not have been directed out, presumably because neither was negligent as a matter of law. And thirdly (again without citation to support them) they complain that a building inspector's testimony should not have been stricken as irrelevant because he discussed an Anne Arundel County code violation which appellants contend was the proximate cause of the accident. Since the validity of the latter argument bears upon whether appellants proved sufficient evidence of negligence to warrant submission to a factfinder we will address the evidentiary complaint first.

The building inspector testified that the Anne Arundel County building code (which was never identified or offered here or at trial)[2] required railings or banisters to be in place when homes were finally inspected after construction. Inspections were not made of residences after occupancy and the inspector initially stated that he knew of no requirement that handrails could not be removed after approval. He then contradicted himself in that regard, and expressed an opinion that the code did preclude subsequent removal. The judge found his testimony confusing and to the extent discernable, irrelevant. He struck it from the record.

 Without knowing what code or statute is in question, neither the judge nor this Court can determine its relevance

---

**2.** We have no intention of researching the laws of Anne Arundel County to see if one or more can arguably be identified as that to which the witness referred. "[W]e do not intend to permit counsel to impose upon us the burden of work, which should have been done by them." *Strohecker v. Schumacher, etc.,* 185 Md. 144, 147, 43 A.2d 208 (1945).

as a matter of law. Because appellants failed to apprise us or the judge, such failure alone justifies the judge's conduct.

■ To the extent the inspector's testimony suggests the content of the ordinance, statute or whatever, as described it addressed only compliance with construction code requisites. Even stretched interpretatively it applied only to initial occupancy permits. There is no evidence that this issue related at all to whether such railings or banisters were required as a condition of continued occupancy. To the extent that the inspector changed his mind regarding the interpretation of the illusory code, he was not offered or qualified as an expert in anything, let alone legal interpretation of county laws. Such interpretative responsibilities are primarily for a judge and if ambiguous may be a mixed question of law and fact; however, a building inspector, whose qualifications for such a duty are not before the court, may not express an opinion thereon. The judge did not err in holding the testimony to have been irrelevant and inadmissible.

With or without such testimony we are hard-pressed to find evidence of a breach of a duty owed to a social guest even if we assume the absent railing created a dangerous condition. Despite a vociferous dissent in *Sherman v. Suburban Trust Co.*, 282 Md. 238, 250–254, 384 A.2d 76 (1978), the Court of Appeals has refused to abandon the common law distinctions between invitees, licensees and trespassers for purposes of the law of premises' liability. That distinction is at the root of appellants' problem.

■ A social guest is nothing more than a licensee to whom the possessor owes no duty of inspection and affirmative care to make the premises safe for his visit. Prosser, *Torts*, 378 (4th ed. 1971). Although some writers have suggested that social guests be treated as invitees, *id.* at 379, and some states which have abolished the distinction have done so, Maryland is not among them. In *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265 (1972), the Court of Appeals through Judge Digges addressed the varying

duties and standards of care due invitees, licensees and trespassers. He pointed out that there are two types of licensees, a bare licensee whom he compared to a trespasser, and significantly for our purposes a licensee by invitation.

"A licensee by invitation is a social guest who takes the premises as his host uses them. In general, the legal duty owed him by the host is to take the same care of the guest as the host takes of himself or members of his family. He must exercise reasonable care to make the premises safe for his guest or he must warn him of known dangerous conditions that cannot reasonably be discovered and which in fact are not discovered by the guest." *Id.* at 521–522, 287 A.2d 265.

That summary of the law arose from *Paquin v. McGinnis,* 246 Md. 569, 229 A.2d 86 (1967), where the duty owed by a host to a social guest in his home was first addressed. Judge Marbury explained for the Court that:

"A social guest who enters a premises at the express or implied invitation of the host is not an invitee in a legal sense even though he enters the premises upon the basis of the invitation. A social guest enters the premises of his host for his own benefit and convenience, and the hospitality the guest receives is bestowed gratuitously. The use of the premises is extended to him merely as a personal favor to him. As a sign of hospitality the host often treats the guest as 'one of the family' to whom is offered the first serving or the most comfortable chair. The legal duty owed to a social guest by a host is to take the same care of the guest that the host takes of himself and other members of his family." *Id.* at 572, 229 A.2d 86.

He went on to point out when, and *only* when, liability would fall upon a host, relying on the Restatement, *Torts* § 342 which the Court adopted.

"The Restatement (Second), *Torts,* Section 342, imposes liability upon a host for physical harm caused to guests by a condition on the premises if, but only if, (1) the host knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to

such guests, and should expect that they will not discover or realize the danger, and (2) the host fails to exercise reasonable care to make the condition safe, or to warn the guests of the condition and the risk involved, and (3) the guests do not know or have reason to know of the condition and the risk involved." 246 Md. at 572, 229 A.2d 86. Emphasizing the very limited duty even to warn of dangers or defects, Judge Marbury pointed out that there is not even that duty where the host had no knowledge or means of knowledge of the danger or defect. Furthermore, if the condition "should be obvious" to the guest, the host need not warn him. Maryland has clearly turned a deaf ear to the social siren song sung by some law review writers (Prosser, *supra*) that social guests be treated as invitees rather than licensees.

Despite that seeming set back, appellants contend that Maryland should not be so rigid when the social guest is a child. The *Paquin* adoption of § 342 of the Restatement of Torts permits a host, knowing of a dangerous condition (such as the removal of a guardrail), an alternative: either he may do something to make the condition safe or he must warn his guests of the condition and its risks. But to warn a child of such tender years is futile due to its inability to exercise judgment or discretion, or even negligently to contribute to its own injury. *Miller v. Graff,* 196 Md. 609, 78 A.2d 220 (1951). Here the judge himself commented upon the futility of such a warning to one so immature.

Appellants would extend *Paquin*'s adoption of § 342 of the Restatement of Torts by implication, pressing us to impose an enhanced liability upon a landowner host to a child social guest suggested by other sections of the Restatement. Section 343 B equates the duty of a host to such child guests whether licensees or invitees—the same as if the child were a trespasser. Section 339 establishes the duty owed to trespassing children:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in inter-meddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

Thus by analogy (should we adopt appellant's reasoning) when a child is not of sufficient maturity to be susceptible to a warning, the host's alternative to warn is removed and he would become the child's protector.

It would appear that Maryland has never directly addressed this child social guest distinction, but in other jurisdictions there are two lines of cases that have evolved regarding the existence and nature of the duty a host owes to a child guest. In a number of cases the general rule is applied that a child social guest is a *bare* licensee to whom the host owes only a duty to refrain from active wrongdoing and to warn of dangers known to him and not likely to be discovered by the guest. Other jurisdictions seem to impress upon landowners the same enhanced liability for child guests whether licensees or invitees as they do for child trespassers. Anno. *Liability for Injury or Death of Child Social Guest,* 20 A.L.R.3d 1127. As we read *Bramble* and *Paquin* regarding adult social guests, Maryland is somewhere between the two.

The host-protector theory or "rule of reasonable care", holds a possessor of land to the duty of carrying on his activities with reasonable care for the safety of his child

social guests if he should *expect* that they will not discover or realize the danger which would be caused by the child's failure to do so, and they do not know or have reason to know of the risks involved. This application of the enhanced test of liability is dependent upon the foreseeability that a particular condition might or could cause injury to an invited child. In most instances, such question of foreseeability would be a jury question even if the danger should be obvious to an adult, because depending upon the child's degree of infancy, it is a factual question not only whether he was capable of exercising judgment or discretion but also whether the host should have known of the child's limited capacity to recognize danger.

What is suggested by appellants is that we adopt for minor social guests such "liberal version of the attractive nuisance doctrine", *Herring v. Christensen,* 252 Md. 240, 241, 249 A.2d 718 (1969) (as set forth in the Restatement of Torts § 339), despite its repeated rejection by the Court of Appeals in cases involving children who are (bare) "licensees or trespassers". *Macke Laundry Serv. Co. v. Weber,* 267 Md. 426, 428, 298 A.2d 27 (1972). Beyond that, the Court of Appeals recently has declined to increase the duty owed by a landowner to a trespassing child of tender years, *Murphy v. Baltimore Gas & Elec.,* 290 Md. 186, 428 A.2d 459 (1981), while clinging to the varied degrees of duty owed by a property owner dependent upon the status of the injured party. *Sherman, supra.* It seems apparent that if the Court rejects the § 339 approach to trespassing children or children as bare licensees, see *Macke, supra,* and rigidly adheres to the *Sherman* distinctions, it is not likely to be beguiled by appellants' argument that minor socially invited licensees should be distinguished.

It appears that the state of the law as to licensees by invitation (*i.e.,* social guests) remains as described in *Paquin, supra,* and the hosts' duty is not enhanced by the Restatement § 339 foreseeability test even though the guest is a child. But we should not have to decide that in this case because here the child guest was in the custody of its

parents who are responsible for its welfare; however, appellants rely on that as well.

Appellants contend that even though the child's parents had been warned and assuming they were negligent, such negligence could not be imputed to the child under Md.Cts. & Jud.Proc.Code Ann., § 10–910 which reads that,

"[i]n an action on behalf of an infant to recover for death, personal injury, or property damage the negligence of the parent or custodian of the infant may not be imputed to the infant."

 But appellants transpose the significance of their custodial responsibilities as well as the significance of that section. The statute was not intended to relieve parents from all supervision of a child. *Caroline v. Reicher,* 269 Md. 125, 130, 304 A.2d 831 (1973). By Md.Ann.Code, Art. 72A, § 1, the parents of a minor child are charged with, among other things, the "care and welfare" of that child. *Palmer v. State,* 223 Md. 341, 343, 164 A.2d 467 (1960). The obligation is not a perfunctory one to be performed only at the voluntary pleasure or whimsical desire of the parent. *Id.* at 351, 164 A.2d 467. The responsibility for supervision of such child may be relinquished or obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility. Such parent may not impose the responsibility of supervision of his or her minor child on a third person unless that person accepts the responsibility, and a third person may not assume such responsibility unless the parent grants it. *Cf. Pope v. State,* 284 Md. 309, 323–324, 396 A.2d 1054 (1979).

 The parental duty of supervision looking to the care and welfare of a child includes protecting it from known or obvious dangers. That duty may not be imposed upon, or assumed by, another without mutual consent. It follows that if a condition is open and obvious rather than latent or obscure, no greater duty is imposed upon a host of a child under parental supervision than would be owed to

the parent. If the parent has either been warned, or if the condition is or should be obvious to the parent, the parents' failure properly to supervise its child is the proximate cause of a subsequent injury. The host is not negligent because he has performed his duty of having the premises as safe for his guest as for his family and himself. *Bramble* and *Paquin,* both *supra.*

In short, to the extent that a property owner's duty to a child social guest may be inversely proportional to the child's age, it is a derivative parental duty assumed by conduct or expression of the parents and host. But where the infant licensee by invitation remains with and under supervision of its parents any added responsibility to a child guest is superseded by the parents accompanying him. See *Freeze v. Congleton,* 276 N.C. 178, 171 S.E.2d 424 (1970). We are not persuaded that because a child is a licensee by social invitation, the host's duty is any more than he agrees to assume by his invitation.

If an invitation expressly or implicitly assumes the parents' responsibility for supervision of a child and that responsibility is given over by the parents, obviously the duty owed the child by the host grows proportionately with the assumption of responsibility. But where the child is only implicitly invited as part of an invitation to its parents, the host may not have thrust upon him the care and welfare responsibilities of the parent bestowed by God and Act of the General Assembly. See *Hempfling v. Patterson,* 229 F.Supp. 391 (D.Md.1964).

In the case before us the potentially dangerous condition was obvious to anyone with normal vision. The photographs make that clear. Furthermore, the child's father was expressly warned by his father that the condition could be dangerous to Adam, and his mother (who had left Adam "with his grandparents and the other guest") had descended the very stairs where the child fell.

The injury was indeed regrettable, but the parents of a child may not enter the home of their host as guests,

and impose their parental supervisory responsibilities upon host and hostess simply by depositing the child with other guests. A host or hostess can not be required to follow from room to room an active two year old—brought by his parents—protecting him from his indiscretions and the innumerable obvious though dangerous conditions that exist in every home. It is the parents' role to see that the child does not fall down steps (with or without banisters), touch hot stoves, play with matches, cut himself with kitchen knives, endanger himself by investigating the electrical contrivances endemic to our age or by the climbing propensities of most active children.

 Appellants argue to us that:

"Neither parent did anything that was factually or legally negligent. Clearly their conduct was not negligent as a matter of law. They were not required to put a leash or chain on Adam and hold him in one place by the lead."

Certainly, if that is so regarding the parents, it is doubly so as to their host. If anyone had the duty to protect Adam from the obvious danger to a child of an open stairwell, it was his parents, not their host. The judge did not err in directing a verdict in favor of the Wilsons.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.