The plaintiff, Rita Williamson, who sued individually and as mother and next friend of Nicholas Williamson, appeals from a summary judgment entered in favor of the defendants, Tyson Foods, Inc.; C.T.B., Inc.; and Sherrill Smith. Nicholas Williamson was injured when he stuck his finger into a hole in an automatic chicken feeding system that had been manufactured by C.T.B. and that was being used in a chicken house owned by Sherrill Smith, who raised chickens under a contract with Tyson Foods. Rita sought damages on the basis of product liability, a negligent failure to warn, and premises liability.
This Court's review of a summary judgment is limited to the record. Kemp Motor Sales, Inc. v. Lawrenz, 505 So.2d 377, 379
(Ala. 1987). A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant.Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991).
The record reveals the following facts surrounding the accident: Smith is in the business of raising chickens. He testified in his deposition that, since the early 1980s, he had used the automatic feeders manufactured by C.T.B. The automatic feeders distributed feed along a metal pipe; augers within the pipe forced the feed through holes in the underside of the pipe. The feeders had been manufactured with the holes encircled by a wire cylinder; the cylinder was attached to the feeding pan approximately six inches below the pipe.
Smith testified that he had modified the feeders by drilling additional holes in the bottom of the metal pipe that distributed the feed. The system as modified allowed more feed to come out of the pipes. Smith testified that he used the modified automatic feeder only to feed new chicks, and that after the chicks were seven days old, the extra holes were covered with PVC slides.
In 1989, Smith hired Terry Williamson, Nicholas's father, to work on Smith's chicken farm. Smith furnished Williamson and his family a place to live on his property close to the chicken house where the accident occurred. On the day of the accident, May 14, 1990, another of Smith's employees had told Terry to prepare the chicken house for the receipt of a shipment of day-old chicks. Terry worked that morning preparing the chicken house for the chicks. Terry testified that he went to his house for lunch and brought Nicholas back with him when he returned to work in the chicken house.
Terry worked on the motor of the automatic feeder and then turned on the feeder to see if it was operating properly. The holes drilled by Smith were uncovered in preparation for the new chicks. After turning the feeders on, Terry, accompanied by Nicholas, walked along the feeder line. Reaching the end of the line, Terry said, he turned around and began to walk in the other direction; approximately 30-45 seconds later, he said, he saw the feed line "give." Terry testified that he turned around and saw Nicholas, who said, "My finger is gone." Nicholas, who was four years old at the time of the accident, testified in his deposition that his father had told him to check and see if food was coming out of the pipe. He testified that he had gotten down on his knees and had stuck his finger into the pipe. *Page 1263 
 I. TYSON FOODS
Rita argues on appeal that Tyson Foods was not entitled to a summary judgment because, she says, Tyson had asserted control over Smith and his management practices and that control placed Tyson and Smith in a master/servant relationship and placed joint liability on Tyson for Nicholas's injury. Tyson, however, contends that Smith was an independent contractor and that it did not retain the right to control Smith's means of operations.
The record contains no evidence that Tyson retained the right to control the manner in which Smith was to perform the contract. This Court has held:
 "To recover against a defendant on the theory of respondeat superior, it is necessary for the plaintiff to establish the status of master and servant and to establish that the act was done within the scope of the servant's employment. Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970). For one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Id."
Jenkins v. Gadsden Times Pub. Corp., 521 So.2d 957, 958
(Ala. 1988); see also Spell v. ConAgra, Inc., 547 So.2d 501,502-03 (Ala. 1989).
Because the plaintiff presented no substantial evidence to rebut Tyson's prima facie showing that it did not retain the right to control the manner in which Smith performed his contract, we affirm the summary judgment as to Tyson Foods.
 II. C.T.B., INC.
Rita argues on appeal that C.T.B. manufactured a feeder that was not reasonably safe for its intended use and that it failed to warn of the unreasonably dangerous condition of the feeder. She also argues that C.T.B. failed to submit any affidavits to establish that it was entitled to a judgment as a matter of law and, therefore, that she never had the burden of presenting substantial evidence creating a genuine issue of material fact.
C.T.B. contends that, in this case, it properly established that it was entitled to a judgment as a matter of law throughdeposition testimony in the record, specifically the deposition testimony of Nicholas and Terry, and that it was not required to establish that it was entitled to judgment as a matter of law through affidavits. C.T.B. also contends that the undisputed deposition testimony established that the alleged dangerous condition that injured Nicholas was the result of Smith's modification of the feeder.
In his deposition testimony, Terry Williamson testified as follows:
 "Q. And there were two ways this feed could fall out of the bottom of that pipe; first there were places designed into the pipe where the pans were where it would drop down; is that right?
"A. [Terry Williamson]: Yes.
 "Q. And there also were some holes drilled actually in the pipe itself?
"A. Yes.
 "Q. There were two different ways it could come out, right?
"A. Yes.
". . . .
 "Q. It's my understanding from what your wife said earlier in her answer to interrogatories that your son injured his finger by putting it in one of the drilled holes instead of one of the places for the pan; is that right?
"A. Yes.
"Q. How did you know that?
 "A. That was the only place he could have stuck his finger.
 "Q. You can't get your finger in the ones with the pans?
 "A. The pans do not move. They are designed where the pan does not move.
 "Q. So he couldn't have got it in where the pans were; is that right?
"A. That's right."
This Court has recently restated the elements of a claim under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD): *Page 1264 
 " 'To establish liability, a plaintiff must show:
 " '(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 " '(a) the seller is engaged in the business of selling such a product, and
 " '(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.' "
Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala. 1991) (quoting Casrell v. Altec Indus., Inc., 335 So.2d 128, 132-33
(Ala. 1976)) (emphasis added).
We note that "the mere fact that a product has been modified by the buyer subsequent to the sale does not always relieve a manufacturer of liability." Johnson v. Niagara Machine ToolWorks, 555 So.2d 88, 91 (Ala. 1989). However, the plaintiff must show that "the injury was not caused by the change." Id.
(quoting Industrial Chemical Fiberglass Corp. v. HartfordAcc. Indem. Co., 475 So.2d 472 (Ala. 1985)). The record in this case clearly shows that Nicholas was injured when he stuck his finger into a hole drilled by Smith. Rita failed to produce substantial evidence in order to defeat C.T.B.'s properly supported motion for summary judgment. Therefore, we affirm the summary judgment as to C.T.B.
 III. SHERRILL SMITH
Rita argues that Smith failed to exercise reasonable care to protect children from the dangerous artificial condition he had created in his chicken house. She contends that Smith could have prevented this accident by posting signs warning of the dangers of the chicken house and the feeder, by warning his employees that the chicken house was dangerous and that they should not bring their children into the chicken house, and/or by putting around the holes wire cages similar to those around the pre-drilled holes.
Terry Williamson testified that Smith had told him that a person could lose a finger by sticking it into one of the drilled holes when the automatic feeder was running. Terry also testified that he knew the machine was running at the time of the accident and that he was aware that "mechanical equipment inside the pipe was turning at the time the auger was on." Based upon this testimony, and assuming that Smith had a duty to warn his employees of the dangers of the automatic feeder, one must conclude that Smith had warned Terry, his employee, of the dangers of sticking a finger into the drilled holes while the feeder was running.
The issue then becomes whether Smith is liable to Rita Williamson — either to her individually or to her as mother and next friend of Nicholas — for the injuries Nicholas suffered, while with his father at work, when Nicholas stuck his finger into one of the drilled holes while the feeder was running.
Although this Court has stated that the contributory negligence of a parent will not be imputed to his child so as to bar the child's recovery, a consideration of negligence on the part of Nicholas's father is useful in determining whether the injury to Nicholas was foreseeable to Smith. A case from the Maryland Court of Special Appeals, Laser v. Wilson,58 Md. App. 434, 473 A.2d 523 (1984), illustrates the difference between analyzing a parent's lack of supervision and/or failure to take steps to protect his child of tender years as a factor in determining the foreseeability of the injury to the child, and analyzing it as the parent's own contributory negligence. In Laser, a 2 1/2-year-old child, Adam Laser, had broken his leg when he fell from an unguarded stairwell and landing. Adam and his family had been invited to the Wilsons' house for a holiday party. Adam's parents sued the Wilsons, alleging a negligent breach of the Wilsons' duty owed to Adam to prevent his injury. The trial court directed a verdict in favor of the Wilsons.
Adam's parents had been specifically warned about the unguarded landing; however, on appeal, they argued that, assuming they were negligent in their supervision of Adam after being warned of the dangerous condition, their negligence could not be imputed to the child under Maryland law. Id. (citing Md.Cts. Jud.Proc. Code Ann. § 10-910). *Page 1265 
In affirming the judgment based on the directed verdict, the Maryland court held:
 "[The] appellants transpose the significance of their custodial responsibilities as well as the significance of that section. The statute was not intended to relieve parents from all supervision of a child. By Md.Ann. Code, Art. 72A, § 1, the parents of a minor child are charged with, among other things, the 'care and welfare' of that child. The obligation is not a perfunctory one to be performed only at the voluntary pleasure or whimsical desire of the parent. The responsibility for supervision of such child may be relinquished or obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility. . . .
 "The parental duty of supervision looking to the care and welfare of a child includes protecting it from known or obvious dangers. That duty may not be imposed upon, or assumed by, another without mutual consent. It follows that if a condition is open and obvious rather than latent or obscure, no greater duty is imposed upon a host of a child under parental supervision than would be owed to the parent. If the parent has either been warned, or if the condition is or should be obvious to the parent, the [parent's] failure properly to supervise its child is the proximate cause of a subsequent injury. The host is not negligent because he has performed his duty of having the premises as safe for his guest as for his family and himself."
Id. at 528-29 (emphasis added; citations omitted).
In O'Clair v. Dumelle, 735 F. Supp. 1344 (N.D.Ill.), affirmed
919 F.2d 143 (7th Cir. 1990), the federal district court, applying Illinois law, held that a homeowner was not liable for the death of a three-year-old child that had drowned in the owner's swimming pool. In so holding, the district court stated that its decision was not based on the failure or negligence of the child's mother to supervise the child, "but theunforeseeability of her failure to do so." Id. at 1351 (emphasis added). The court went on to state:
 "Under the circumstances of this case, the most important of which was that [the child] was in the custody and supervision of her mother, it was not reasonably foreseeable that [the child] would have access to the pool because it was not reasonably foreseeable that [the mother] would fail to take the basic precaution of ensuring that [the child] did not have access to the pool by locking the sliding door or by taking other protective measures. . . .
". . . .
 ". . . [T]he other conditions of the pool . . . merely made [the child's] drowning possible. Illustrative is Dunaway [v. Ashland Oil Co., 172 Ill. App.3d 712, 122 Ill. Dec. 557, 526 N.E.2d 950
(1988)], which was an action against an owner of an oil well and the owner of the land upon which the well was located to recover for the injuries sustained by [a] child who was injured, while trespassing on the land, when one of his companions dropped a firecracker into an oil storage tank causing it to explode. 122 Ill.Dec. at 559, 526 N.E.2d at 952. Affirming the trial court's dismissal of the complaint, the Dunaway court concluded that the defendant's failure to enclose and lock the storage tanks merely created a condition which made plaintiff's injuries possible. There, the proximate cause of plaintiff's injuries was the objectively unforeseeable actions of a third-party — the misconduct of his companion. 122 Ill.Dec. at 559-60, 526 N.E.2d at 952-53. Here, [the child's] drowning was not due to the condition of the pool, but the objectively unforeseeable failure of [the mother] to lock the sliding door leading to the pool or to take other protective measures.
". . . .
 "Under the Illinois Wrongful Death Act, the contributory negligence of a next of kin does not bar recovery. Yet, no recovery can occur until it is found that the defendant owed a duty to the deceased. Nothing in the Illinois Wrongful Death Act prevents the conduct of the next of kin from being considered in the foreseeability *Page 1266 
analysis and resulting in a finding that no duty was owing from the defendant to the decedent. This is not the functional equivalent of allowing next of kin 'negligence' to bar recovery since there will be many times where a parent's failure to supervise the child to such an extent as to eliminate or minimize the risk from which the injury resulted will be foreseeable. . . . Under the circumstances of this case, where the young child was under the sole custody and supervision of a parent, it was not foreseeable that the parent would fail to undertake basic precautions to safeguard the child from an obvious risk [that] was well known to the parent."
Id. at 1351-53 (emphasis added).
In the present case, we hold that Rita failed to produce substantial evidence that Terry's failure to protect Nicholas from a risk that was well known to Terry, after bringing Nicholas to work with him, was foreseeable to Smith. Nicholas was at his father's place of work at his father's invitation, not Smith's. Terry had been warned of the danger associated with the operation of the modified automatic feeder. Also, Smith used the modified feeder only to dispense feed for a one-week period following the arrival of new chicks in the chicken house; at all other times the holes Smith had drilled in the pipe were covered with PVC slides. On the day of the accident, Terry, preparing for the arrival of new chicks, had started the automatic feeder and was alone in the chicken house with Nicholas. Rita presented no evidence that Smith knew that Nicholas would be brought to the chicken house while his father was preparing the automatic feeder for the new chicks and, more importantly, she presented no evidence that Smith had any reason to believe that Terry would not properly protect Nicholas from the known danger presented by the operation of the modified automatic feeder.
Therefore, we hold that the injury to Nicholas was unforeseeable to Smith and that Terry's failure to protect Nicholas was the proximate cause of Nicholas's injury. This decision is based on the specific facts in the record on appeal and it does not abrogate any other decision defining the scope of liability of a landowner; specifically, this decision does not affect that line of cases interpreting Restatement (Second)of Torts § 339 (1977). See Fletcher v. Hale, 548 So.2d 135
(Ala. 1989); Motes v. Matthews, 497 So.2d 1121 (Ala. 1986);Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976).
Based upon the foregoing, the summary judgment in favor of the defendants is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.