Ashley Horace and her father Alphonse Horace appeal from a summary judgment entered against them in their action seeking compensation from Joyce Braggs for personal injuries Ashley suffered in a swimming-pool accident. We affirm.
None of the facts necessary to the resolution of this case is in dispute. On October 1, 1994, Joyce Braggs organized a birthday party for her a-year-old daughter at the home of Braggs's sister, Cybil Thomas. Approximately 14 children were invited to the party, and those who attended ranged from 1 to 13 years of age. Thomas's home was customarily used as a family gathering place, in part because there was a swimming pool on the Thomas property. The swimming pool was located behind the house and was partially surrounded by a "wooden privacy fence."
On one side of the house was a carport. It was there that Braggs set up a barbecue grill on which she cooked for the party guests. The wooden fence hid the pool itself from the view of persons in the carport. During the party, refreshments were being served inside the carport.
Among the invited guests was 5-year-old Ashley Horace. She attended the party accompanied by her father Alphonse; her 12-year-old brother Alphonse, Jr.; and her 10-year-old brother Allen. Like other guests at the party, the Horaces and the Braggses were close relatives.
As soon as they arrived, Ashley went into the pool and her father told Alphonse Jr. to watch out for her. Eventually, Ashley got out of the pool and went to the carport for refreshments. As soon as she had eaten a portion of a hamburger, she started to return to the pool. At the insistence of her father, however, she waited a few more minutes before returning to the pool.
After Ashley returned to the pool, Mr. Horace remained in the carport for 15-20 minutes. From the carport, he went inside the house, where he spent approximately 10 minutes. While he was inside, children discovered Ashley lying on the bottom of the pool and they pulled her out. Although she survived and has partially recovered, she has permanent brain damage.
On July 3, 1996, Ashley and her father sued Braggs in a two-count complaint, alleging that Braggs had negligently or wantonly "failed to provide a safe place that was watched by adult supervision for the minor child to swim thus allowing the child to enter the pool area and fall in." The court granted Braggs's motion for a summary judgment. The plaintiffs appeal.
The question in this case is whether a social host, who is not the property owner, owes a duty to provide adult supervision for a child's activities in the landowner's swimming pool while the child's parent or guardian is present on the premises, and where the social host has not been requested, and has not volunteered, to provide supervision for the child.
At the outset, we note that "water hazards" are not regarded as inherently "dangerous instrumentalities." Massey v. Wright,447 So.2d 169, 173 (Ala. 1984) (emphasis added); see also Glover v.City of Mobile, 417 So.2d 175, 179 (Ala. 1982); Bailey v. City ofMobile, 292 Ala. 436, 439, 296 So.2d 149, 152 (1974); Mayo v.Mobile Asphalt Co., 272 Ala. 442, 445, 131 So.2d 881, 884 (1961). Also, "[i]t is well settled in Alabama that where the danger from the instrumentality which caused the injury is patent and obvious *Page 637 
the doctrine of attractive nuisance is inapplicable." Earnest v.Regent Pool, Inc., 288 Ala. 63, 66, 257 So.2d 313, 316 (1972). (Emphasis added.) "[B]odies of water have long been held to present an obvious danger of drowning, even to children." Englundv. Englund, 246 Ill. App.3d 468, 476, 186 Ill.Dec. 57,615 N.E.2d 861, 867, appeal denied, 153 Ill.2d 558, 191 Ill.Dec. 618, 624 N.E.2d 806 (1993) (emphasis added).
Moreover, it has been held that "[w]hen small children are being watched by their parents, or entrusted persons in supervision, landowners may be relieved of [a] duty to warn them of or remove [a] dangerous instrumentality the danger from which is apparent." Strode v. Becker, 206 Ill. App.3d 398, 405, 151 Ill.Dec. 420, 564 N.E.2d 875, 880 (1990). In Baldwin v. Mosley,295 Ark. 285, 748 S.W.2d 146 (1988), the trial court held that a parent's presence on the premises at the time a minor was injured "negated any duty" the premises owner may have owed the minor.Id. at 286. 748 S.W.2d 146. The Arkansas Supreme Court agreed, at least where the offending instrumentality presented an "open and obvious" danger. Id. at 288, 748 S.W.2d at 147.
Nowhere have we found this rule explained more fully than inLaser v. Wilson, 58 Md. App. 434, 473 A.2d 523 (Ct. Spec. App. 1984), where a two-year-old child fell from a stairway in the home of a social host where the parents were present. Id. at 438, 473 A.2d at 525. Concerning the duty of the social host vis-a-vis the parents, the court stated:
 "[T]he parents of a minor child are charged with, among other things, the `care and welfare' of that child. . . . The obligation is not a perfunctory one to be performed only at the voluntary pleasure or whimsical desire of the parent. . . . The responsibility for supervision of such child may be relinquished or obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility. Such parent may not impose the responsibility of supervision of his or her minor child on a third person unless that person accepts the responsibility, and a third person may not assume such responsibility unless the parent grants it. . . .
 "The parental duty of supervision looking to the care and welfare of a child includes protecting it from known or obvious dangers. That duty may not be imposed upon, or assumed by, another without mutual consent. It follows that if a condition is open and obvious rather than latent or obscure, no greater duty is imposed upon a host of a child under parental supervision than would be owed to the parent. . . . The host is not negligent [if] he has performed his duty of having the premises as safe for his guest as for his family and himself. . . .
 "In short, to the extent that a property owner's duty to a child social guest may be inversely proportional to the child's age, it is a derivative parental duty assumed by conduct or expression of the parents and host. But where the infant licensee by invitation remains with and under supervision of its parents any added responsibility to a child guest is superseded by the [parents'] accompanying him. . . .
 "If an invitation expressly or implicitly assumes the parents' responsibility for supervision of a child and that responsibility is given over by the parents, obviously the duty owed the child by the host grows proportionately with the assumption of responsibility. But where the child is only implicitly invited as part of an invitation to its parents, the host may not have thrust upon him the care and welfare responsibilities of the parent bestowed by God and Act of the General Assembly. . . .
". . . .
 ". . . [T]he parents of a child may not enter the home of their host as guests, and impose their parental supervisory responsibilities upon host and hostess simply by depositing the child with the other guests. A host or hostess can not; be required to follow from room to room an active two year old — brought by his parents — protecting him from his indiscretions and the innumerable obvious though dangerous conditions that exist in every home."
Id. at 445-47, 473 A.2d at 528-29.
The Illinois Appellate Court's Englund case, supra, is essentially on point with this *Page 638 
present one. Like this present case, Englund involved a swimming pool accident that occurred at a children's birthday party while the parents were present on the premises. More specifically, the facts were as follows:
 "The homeowners had a party to celebrate one of their children's birthdays on August 20, 1989, at the homeowners's house. . . . The house had a large deck connected to the back and an above-ground swimming pool in the backyard. The pool was about four feet deep, and there was a deck connected to the pool at the side of the pool that was furthest away from the house. The pool deck ringed the edge of the pool for about a quarter of the pool's circumference. The pool deck had a four-foot fence along its outer edges and was aligned in such a way that its surface area could be seen from the house deck.
 "The pool took up a good portion of the homeowners' yard. Next to the pool was a garage and behind the garage was a swing set with sand spread underneath it to eliminate mud under the swings. Because the sand area was behind the garage, very little of it could be seen from the house deck. A set of permanent wooden steps leading to the pool deck began just across from the sand area. At the top of the wooden steps was a gate with a latch. The gate, which was four feet high, was not self-closing. There was a dispute as to whether a small child could open the latch from outside the deck.
 "On the day of the incident, plaintiff, her husband, and their five children, including [three-year-old] Lauren, came to the homeowners' house for the party in the mid to late afternoon. Plaintiff brought three pairs of child flotation aids called `water wings' for her children to use. At that time Lauren, her brother Patrick, and her sisters, Stephanie and Michelle, went into the pool, where a number of other children were already swimming. Plaintiff helped Lauren into the water. Lauren was wearing her water wings. While the children were swimming, plaintiff watched them either from the house deck or from the yard and twice noticed that the gate on the pool deck was open. During the party and up until incident, other party guests including plaintiff's husband were coming and going between the house deck and the inside of the house.
 "Most of the children got out of the pool after swimming for about a half hour. Lauren dried off on the house deck and then went to play in the sand behind the garage. At this time, there were no adults near the pool or the sand area. Plaintiff checked on Lauren in the sand area after about five minutes and then returned to the house deck. She did not notice whether the pool deck gate was open or closed when she checked on Lauren in the sand area. After 10 to 15 more minutes passed, plaintiff again left the house deck to get her son Patrick from the pool and Lauren from the sand area so they could eat. Lauren was playing in the sand and appeared to be fine. Lauren said that she was not hungry and asked to be allowed to continue playing in the sand. Patrick exited the pool and went to the house deck with plaintiff:
 "Plaintiff returned to her seat on the house deck, which afforded her a view of the yard but not the sand area, and talked with her father-in-law. After 5 to 10 minutes, plaintiff got up from the house deck to chase down her two-year-old son Sean, who was running toward the pool deck.
She caught him at the top of the deck stairs. The gate at the top of the stairs was open. Plaintiff then heard her son Patrick say, `Mom, something's wrong with Lauren.' Patrick was outside the pool, holding Lauren's arm up out of the water. Lauren was facedown in the pool among various pool toys and rafts.
 "Plaintiff put Sean down, screamed for her husband and jumped in the pool. Lauren was taken out of the water and given CPP while paramedics were called. She was unconscious. Lauren was taken to the hospital where she died nine days later without ever regaining consciousness. . . .
 "Plaintiff brought this suit alleging, inter alia, that the homeowners were negligent in failing to supervise the children at the party . . . ." *Page 639 
246 Ill.App.3d at 470-72, 186 Ill.Dec. 57, 615 N.E.2d at 863-64 (emphasis added).
The trial court granted the homeowners' motion for a summary judgment, "implicitly [finding] that the homeowners had no duty to supervise Lauren under the circumstances." Id. at 472, 186 Ill.Dec. 67, 615 N.E.2d at 864. The Illinois Appellate Court agreed, stating: "We believe that the question of the homeowners' liability was properly decided as a matter of law in this case, since the homeowners had no duty to protect Lauren from obviousdangers, especially those apparent to Lauren's parents, who undertook to supervise Lauren." Id. at 474, 186 Ill.Dec. 57, 615 N.E.2d at 865 (emphasis added). That court further explained:
 "[P]laintiff testified in her deposition that the homeowners were busy attending to the various party guests and were not devoting their time to watching the children playing in the pool or yard. It was plaintiff's responsibility to make sure that Lauren did not gain access to the pool, and she could have done so by positioning herself in an area from which she could have seen Lauren play in the sand, or by latching the pool gate herself. . . . [I]t is more desirable to place the substantial burden of supervising plaintiff's daughter upon plaintiff rather than the homeowners."
Id. at 476, 186 Ill.Dec. 57, 615 N.E.2d at 867.
The court also rejected an argument of the plaintiff that the homeowners had, in a deposition statement, "admitted their negligence." Id. at 478, 186 Ill.Dec. 57, 615 N.E.2d at 868. The alleged admission was: "We just got too relaxed." Id. The court merely reiterated that the `parents, not the homeowners, had the "primary duty to watch Lauren." Id. (emphasis added). "Thus," the court explained, "even if the homeowners acknowledged that theywere lax in their attention to Lauren, this does not relieveplaintiff of her duty to Lauren and does not render thehomeowners liable for Lauren's death." Id. (emphasis added).
These cases suggest the proper holding and rationale in this case. The plaintiffs presented no evidence indicating that the primary duty for supervising Ashley had shifted to Braggs at the time of the accident. Mr. Horace expressly permitted Ashley to play in the swimming pool, and he knew that she was doing so. Thus, contrary to the allegations in the complaint, Ashley did not "fall in" the swimming pool, which, as we explained above, is not regarded in this state as a dangerous instrumentality.
Moreover, Mr. Horace knew that Braggs was busy attending to her guests and was not watching children in the pool. Indeed, he expressly ordered Alphonse Jr. to watch her. At no time, did Mr. Horace or Alphonse Jr. leave the premises. Under these facts, Braggs owed no duty to provide "adult supervision" for Ashley Horace. In other words, she owed no duty to provide more supervision for 5-year-old Ashley than she provided for her own 5-year-old daughter in whose honor the party was held.[1] SeeLaser v. Wilson, 68 Md. App. 434, 446, 473 A.2d 523, 529 (Ct. Spec. App. 1984) (a social "host is not negligent [if] he has performed his duty of having the premises as safe for his guest as for his family and himself").
For these reasons, the trial judge properly entered the summary judgment for Braggs. That judgment is, therefore, affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, KENNEDY, SEE, and LYONS, JJ., concur.
[1] What we said in Williamson v. Tyson Foods, Inc.,626 So.2d 1261, 1266 (Ala. 1993), is equally applicable here: "This decision is based on the specific facts in the record on appeal and it does not abrogate any other decision defining the scope of liability of a landowner; specifically, this decision does not affect that line of cases interpreting Restatement (Second) ofTorts, § 339 (1977)." *Page 640