CAROLYN ANN MOONEY, by Robert Mooney, her Father and Next Friend, Plaintiff-Appellant, *v.* LUANNE ETHERIDGE *et al.*, Defendants-Appellees.

Second District   No. 77-328

Opinion filed November 8, 1978.

Donald C. Dowling, of Dowling & Safanda, of St. Charles, for appellant.

Gerald M. Sheridan, Jr., of Wheaton, Reid, Ochsenschlager, Murphy & Hupp, of Aurora, and Robert F. Casey and George E. Krippner, both of Geneva, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Carolyn Ann Mooney, a minor, by her father brought suit against the defendant Luanne Etheridge, the operator of a motor vehicle which struck and injured her, and against the defendant the Oswegoland Park District which sponsored ballet lessons the minor was preparing to attend when hurt. The court directed the verdict for the Park District at the close of all of the evidence. The jury returned a verdict in favor of the defendant driver. Plaintiff appeals contending that the court erred in directing the verdict for the Park District; and erred in refusing an instruction on the issue of speed in the case against Etheridge. She also claims error in denial of access to a statement made by the driver to her insurance company.

The minor was eight years old at the time of the accident. Along with her sister she was being driven by their mother to ballet dancing lessons conducted at the Oswegoland Civic Center, which is owned and operated by the defendant Park District. When Mrs. Mooney arrived at the center the parking lot was full and there was a car backing out of the sole available entrance to the lot. There was street parking available, however, on both sides of the street. There was also an area for perpendicular parking adjoining the street and this area had parking spaces available. Mrs. Mooney parked her van on the far side of the street across from the Civic Center and plaintiff proceeded to exit the vehicle.

At this time the defendant driver, Mrs. Etheridge, had just dropped off her daughter in front of the Civic Center across the street from where the Mooney vehicle was located to attend swimming lessons. There were several other children present in the area. Mrs. Etheridge proceeded down the street some 500 feet to a parking area adjacent to the street where she reversed direction and proceeded back in the direction of the Civic Center.

As the Etheridge vehicle again reached the Civic Center, the minor was crossing the street so as to enter the building. The testimony is uncontroverted that plaintiff crossed from in front of the Mooney van. The testimony, however, is controverted as to whether plaintiff ran into the street or whether she was merely walking fast. There is also a controversy as to whether plaintiff attempted to retreat when she saw defendant's vehicle while she was in the street. In any event, Mrs. Etheridge did not see plaintiff until plaintiff was approximately 4 or 5 feet away from her automobile. She applied her brakes but nonetheless the car drove over plaintiff's foot and leg resulting in severe injuries.

■■ We first consider plaintiff's argument that the trial court erred in refusing to instruct the jury on the issue of the speed of the defendant driver. Although defendant argues that any claim of error has been waived because of the failure to include the specific issue in plaintiff's post-trial motion, we reach the issue on the basis of the general statement in the

motion that the trial court erred "in refusing instructions tendered by the Plaintiff." Only one instruction was in fact refused, that relating to a claimed violation of the speeding statute. (Ill. Rev. Stat. 1977, ch. 95½, par. 11—601(a).) We conclude that the issue was sufficiently identified and preserved for review despite the inaccurate use of the plural "instructions." (See *Wozniak v. Segal*, 56 Ill. 2d 457, 460-61 (1974); *Osborne v. Leonard*, 99 Ill. App. 2d 391, 396 (1968).) But, reaching the issue, we find no reversible error under the circumstances of this case.

The refused instruction was in the form of Illinois Pattern Jury Instruction, Civil No. 60.01 (2d ed. 1971) (hereinafter IPI) charging the statutory violation, as pertinent,

> "No vehicle may be driven upon any highway of this state at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed * * * when special hazards exist with respect to pedestrians * * *." (Ill. Rev. Stat. 1977, ch. 95½, par. 11—601(a).)

The tendered instruction also includes the following:

> "If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent * * *." IPI Civil No. 60.01 (2d ed. 1971).

■■ It is well established in Illinois that " 'the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence.' " (*Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 390 (1976).) Nevertheless, instructions concerning violations of statutes or ordinances should not be given unless the evidence is adequate to support a violation. (*Figarelli v. Ihde*, 39 Ill. App. 3d 1023, 1026 (1976).) Even though the instruction might properly be given the refusal in a particular case is not prejudicial error requiring reversal where its absence does not deprive a plaintiff of a fair and impartial trial. *Maddox v. Smith*, 67 Ill. App. 2d 374, 381 (1966).

In this case it is questionable whether the evidence was sufficient to require the giving of the instruction since the proof at best shows that plaintiff was traveling no more than 20 miles per hour. This was below the maximum speed in the area and the question posed is whether the jury might be permitted to find 20 miles per hour in the presence of children to be an unreasonable speed pursuant to section 11—601(a) of the Motor Vehicle Code. It is noted that the related section pertaining to speed in a school zone permits a speed of 20 miles per hour. See Ill. Rev. Stat. 1977, ch. 95½, par. 11—605.

■■■ In any event, any error in the refusal of an instruction on this record cannot be said to have prevented a fair and impartial trial. An instruction on speed calls upon the jury to examine all the facts and circumstances in evidence including speed and then to decide whether a party should have reduced his speed to avoid a collision. (*Estate of McCullough v. McTavish*, 62 Ill. App. 3d 1041, 379 N.E.2d 890 (1978).) Thus the Motor Vehicle Code applies a standard of reasonable conduct which in the practical sense is coextensive with general negligence principles applicable to accidents involving motor vehicles. The general negligence instruction informed the jury in the language of Illinois Pattern Instructions Civil 10.01 that negligence consists of "the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence * * *." And in the language of IPI Civil 10.02 (2d ed. 1971) the jury was informed that "ordinary care" is the "care a reasonably careful person would use under circumstances similar to those shown by the evidence." The jury was therefore called upon to make the identical determination required by the Motor Vehicle Code as to whether defendant's conduct was reasonable under all the circumstances under the general instructions which it received. We therefore conclude that any error in the refusal of the instruction charging a violation of the speeding statute, and we have found none, was not cause for reversal.

■■ We also find that the trial court did not err in refusing the request of plaintiff's counsel for a statement made by the defendant to her insurance carrier. The statement was requested prior to trial and again in the course of trial during defendant's testimony and in each case was refused on the ground of privilege. The rationale has been stated by the Illinois Supreme Court.

> "The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured. We believe that the same salutory reasons for the privilege as exist when the communication is directly between the client and attorney were present when Della Emberton made her statement to the investigator for her insurer. We therefore conclude that public policy dictates that the statement given by Della Emberton to her insurance carrier was clothed with the attorney-client privilege while in control of the insurer." (*People v. Ryan*, 30 Ill. 2d 456, 460-61 (1964).)

We are not persuaded by defendant's argument that *Ryan* is to be

distinguished because it involved a criminal prosecution of the attorney's client. The supreme court in its opinion made no distinction between criminal and civil proceedings. It is clear that the policy underlying the privilege is to encourage a client to fully present the facts of his legal problem to his attorney. (See *People ex rel. Shufeldt v. Barker*, 56 Ill. 299, 300 (1870).) And this policy is applicable equally to civil and criminal cases. See also McCormick, Evidence §87, at 175-79 (2d ed. 1972).

Nor can *Ryan* be distinguished because there the client had not testified at the time the attorney was requested to produce the statement. We believe that the policy consideration clearly remains the same both before and after the client testifies.

We also conclude that the trial court did not err in directing a verdict in favor of the Oswegoland Park District. Plaintiff reasons that the District is liable because it modified the parking lot thereby causing her accident. There is evidence in the record that the main parking lot for the Civic Center was originally designed to permit a turn around arrangement which would allow a parent to drive in at one end, drop off a child at the door of the Civic Center, and proceed out through the exit. This arrangement was subsequently changed so as to permit bicycle parking and ice skating in the winter time. In addition, Mrs. Mooney testified that when she approached the Civic Center a station wagon blocked the only entrance into the parking lot so that she proceeded to back out into the street. None of these circumstances in our view are sufficient upon which to base liability against the District.

■■■ Generally a landowner has a duty not to maintain conditions on his premises which are dangerous or hazardous to small children. (See, *e.g.*, *Driscoll v. C. Rasmussen Corp.*, 35 Ill. 2d 74, 78 (1966).) Here, of course, the Park District neither possessed nor controlled the public street in which the injury occurred. It is true, however, as plaintiff argues that the Park District had a duty to exercise reasonable care and provide its children-invitees a safe means of ingress. (See, *e.g.*, *McDonald v. Frontier Lanes, Inc.*, 1 Ill. App. 3d 345, 351 (1971).) But the record shows that here there existed a safe method in which a child might gain access since the delivery of children on the same side of the street as the Civic Center would avoid any danger connected with a child crossing the street. No act or omission of the Park District required a more dangerous midstreet crossing; this was a decision of plaintiff's mother who had the primary duty to protect the child. See *Driscoll v. C. Rasmussen Corp.*, 35 Ill. 2d 74, 79 (1966).

■■ Plaintiff also argues that it was the Park District's duty to provide supervisory personnel or warning devices to assist the plaintiff in crossing the street. The cases she cites, however (*Crohn v. Congregation B'Nai Zion*, 22 Ill. App. 3d 625 (1974); *Stanley v. Board of Education*, 9 Ill. App. 3d 963 (1973); *Reid v. YMCA*, 107 Ill. App. 2d 170 (1969)), involve the

general situation where the care and control of a child is entrusted to an organization and the duties imposed upon it are analogous to that of a parent. The cases do not stand for the proposition that if one invites children onto his premises he must also provide safe transit to the premises by way of crossing guards and warning devices. Here the care and control of the child was not entrusted to the Park District and in fact the plaintiff remained with her mother who could have acted in the same capacity as a crossing guard. We agree with the conclusion of the trial court that as a matter of law the Park District was not negligent because it owed no duty to plaintiff at the time of the accident given the particular circumstances. In view of this decision we do not reach defendant's further argument based on the theory of sovereign immunity.

The judgment of the trial court is affirmed.

Affirmed.

GUILD and WOODWARD, JJ., concur.