JANET ENGLUND, Indiv. and as Special Adm'r of the Estate of Lauren Englund, a Minor, Deceased, Plaintiff-Appellant, v. ANDREW ENGLUND et al., Defendants-Appellees.

Second District   No. 2—92—0961

Opinion filed June 18, 1993.—Rehearing denied July 21, 1993.

Stewart D. Stoller, of Stoller & Garstki, of Chicago (Steven E. Garstki, of counsel), for appellant.

Joseph P. Bonaccorsi, of Fraterrigo, Best & Beranek, of Chicago, and Fraterrigo, Best & Beranek, of Wheaton (James F. Best, of counsel), for appellees.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

This appeal comes from an order of the circuit court of Du Page County granting summary judgment for Andrew and Dianne Englund (the homeowners) in a tort action brought by Janet Englund (plaintiff), individually and as special administrator of the estate of her deceased daughter, Lauren Englund (Lauren). Three-year-old Lauren drowned in the homeowners' above-ground swimming pool during a party on August 20, 1989. Plaintiff filed her suit on August 14, 1991, alleging causes of action under the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, par. 1 *et seq.*) and the Survival Act (Ill. Rev. Stat. 1991, ch. 110½, par. 27—6), and requesting payment of expenses for which she became liable under the family expenses provision of the Rights of Married Persons Act (Ill. Rev. Stat. 1991, ch. 40, par. 1015(a)(1)). The trial judge granted summary judgment for the homeowners and plaintiff appeals.

Plaintiff claims in this court that the homeowners owed Lauren a duty to protect her from unreasonably dangerous conditions existing in their backyard and that a material issue of fact exists regarding proximate cause. The homeowners argue that they had no duty to supervise Lauren at the party and that plaintiff's failure to watch Lauren adequately was the proximate cause of her death. We affirm.

The tragic facts of the case are these: The homeowners had a party to celebrate one of their children's birthdays on August 20, 1989, at the homeowners' house in Lombard. The house had a large deck connected to the back and an above-ground swimming pool in the backyard. The pool was about four feet deep, and there was a deck connected to the pool at the side of the pool that was farthest away from the house. The pool deck ringed the edge of the pool for about a quarter of the pool's circumference. The pool deck had a four-foot fence along its outer edges and was aligned in such a way that its surface area could be seen from the house deck.

The pool took up a good portion of the homeowners' yard. Next to the pool was a garage and behind the garage was a swing set with sand spread underneath it to eliminate mud under the swings. Because the sand area was behind the garage, very little of it could be seen from the house deck. A set of permanent wooden steps leading to the pool deck began just across from the sand area. At the top of the wooden steps was a gate with a latch. The gate, which was four feet high, was not self-closing. There was a dispute as to whether a small child could open the latch from outside the deck.

On the day of the incident, plaintiff, her husband, and their five children, including Lauren, came to the homeowners' house for the party in the mid to late afternoon. Plaintiff brought three pairs of child flotation aids called "water wings" for her children to use. At that time Lauren, her brother Patrick, and her sisters, Stephanie and Michelle, went into the pool, where a number of other children were already swimming. Plaintiff helped Lauren into the water. Lauren was wearing her water wings. While the children were swimming, plaintiff watched them either from the house deck or from the yard and twice noticed that the gate on the pool deck was open. During the party and up until the incident, other party guests including plaintiff's husband were coming and going between the house deck and the inside of the house.

Most of the children got out of the pool after swimming for about a half hour. Lauren dried off on the house deck and then went to play in the sand behind the garage. At this time, there were no adults near the pool or the sand area. Plaintiff checked on Lauren in the sand area after about five minutes and then returned to the house deck. She did not notice whether the pool deck gate was open or closed when she checked on Lauren in the sand area. After 10 to 15 more minutes passed, plaintiff again left the house deck to get her son Patrick from the pool and Lauren from the sand area so they could eat. Lauren was playing in the sand and appeared to be fine. Lauren said that she was not hungry and asked to be allowed to continue playing in the sand. Patrick exited the pool and went to the house deck with plaintiff.

Plaintiff returned to her seat on the house deck, which afforded her a view of the yard but not the sand area, and talked with her father-in-law. After 5 to 10 minutes, plaintiff got up from the house deck to chase down her two-year-old son Sean, who was running toward the pool deck. She caught him at the top of the pool deck stairs. The gate at the top of the stairs was open. Plaintiff then heard her son Patrick say, "Mom, something's wrong with Lauren." Patrick was outside the pool, holding Lauren's arm up out of the water. Lauren was facedown in the pool among various pool toys and rafts.

Plaintiff put Sean down, screamed for her husband and jumped in the pool. Lauren was taken out of the water and given CPR while paramedics were called. She was unconscious. Lauren was taken to the hospital where she died nine days later without ever regaining consciousness. Plaintiff noticed a red, protruding bruise on Lauren's right temple when she first saw Lauren at the hospital. Plaintiff did not see the bruise when she checked on Lauren in the sand area and

did not know whether the bruise was present when Lauren was taken out of the pool.

Plaintiff brought this suit alleging, *inter alia*, that the homeowners were negligent in failing to supervise the children at the party; that the homeowners negligently constructed a defective pool deck that had no self-closing and self-locking gate and had permanent stairs rather than stairs that would swing up and lock out of the way; and that the homeowners negligently allowed pool toys to clutter the surface of the water after the children had left the pool. Plaintiff later claimed that the pool deck was also defective because it had a deck plank that would depress when stood upon. The safety instructions that came with the pool recommended that any pool deck be professionally manufactured; that ladders be either removable or of the type that swings up and out of the way, and that ladders be in the up position or removed when the pool is not in use; and that pools be protected by fences with self-closing and self-latching gates that do not allow toddlers to open the latches. Although plaintiff also alleges that the safety instructions accompanying the pool cautioned owners to remove flotation devices when the pool was not in use, we have not found such a precaution in the instructions in the record.

The trial judge granted summary judgment to the homeowners, stating, "Proximate cause was the lack of supervision that, in my opinion, shifted from the homeowner to the parents." The judge implicitly found that the homeowners had no duty to supervise Lauren under the circumstances.

Summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Summary judgment "is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Further, summary judgment should not be granted where conflicting inferences can be drawn from the same set of facts. (*Neumann v. Gloria Marshall Figure Salon* (1986), 149 Ill. App. 3d 824, 826.) When deciding a motion for summary judgment, the trial court must construe the pleadings, depositions, and affidavits on file strictly against the movant and liberally in favor of the movant's opponent. *Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 387.

Plaintiff's main theory in this case is that Lauren climbed the stairs of the pool deck, entered the deck through the gate, tripped on

the loose deck plank, bumped her head and fell or rolled into the pool, where she was obscured from view by the various pool toys left in the pool by the homeowners. If this had actually transpired, it would certainly be arguable that the homeowners should have fixed the loose plank or warned of its existence since a hidden, loose plank that depresses when stood upon would not reasonably be anticipated on a pool deck. However, whether Lauren encountered the loose plank at all is pure speculation, as are questions whether the loose plank caused Lauren to fall or whether Lauren's weight was sufficient to depress the plank. It is just as probable that Lauren fell into the pool while reaching for a pool toy floating near the edge of the pool.

■ With regard to this theory of plaintiff's, the case of *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, is instructive. There, a woman slipped and fell on a ramp while leaving a grocery store. She did not know what caused her to fall and she produced no witnesses to the fall. She did notice grease spots in the general area of her fall, but did not know if she had stepped on one. The trial court granted summary judgment for the store owner. (*Kimbrough*, 92 Ill. App. 3d at 814.) The appellate court affirmed, noting, "Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury." (*Kimbrough*, 92 Ill. App. 3d at 817.) Plaintiff's theory that the loose deck plank somehow caused Lauren to fall is conjecture not supported by the evidence, and such conjecture is not enough to defeat summary judgment on this specific issue.

Plaintiff offers the affidavit of a pool safety expert to support her version of the accident. The affidavit states that the loose plank contributed to Lauren's death. The affidavit, however, contains no additional facts concerning the incident. Consequently, plaintiff's expert is merely guessing as to whether Lauren encountered the loose plank. The affidavit does not provide evidence that Lauren tripped over the plank, but only posits that she could have. The affidavit thus does not create a genuine issue of material fact that would, by itself, preclude the entry of summary judgment.

Absent evidence that the loose plank contributed to Lauren's death, it is clear only that Lauren got onto the pool deck and somehow entered the water. Given Lauren's age and the four-foot height of the pool, it must be assumed that Lauren gained access to the pool deck by climbing the deck's permanent stairs and going through the gate. The question we must answer is whether a jury should have been allowed to decide whether the homeowners were responsible for

Lauren's death based on their failure to construct a pool deck with the proper removable stairs and self-closing and self-latching gate, their failure to remove pool toys from the pool after the swimmers had exited, their failure to place the sand area in a location that could be more readily monitored, or their failure to supervise Lauren adequately. We believe that the question of the homeowners' liability was properly decided as a matter of law in this case, since the homeowners had no duty to protect Lauren from obvious dangers, especially those apparent to Lauren's parents, who undertook to supervise Lauren.

■ The law in Illinois is that landowners generally do not have a duty to protect children on their premises from dangers that are open and obvious, such as the dangers of fire, water and falling from a height. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 325-27.) Because children are expected to avoid obvious dangers, no reasonably foreseeable risk of harm exists. *Cope v. Doe* (1984), 102 Ill. 2d 278, 286.

■ Whether a defendant has a duty for purposes of negligence analysis is a question of law for the court. (*Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 187.) "Factors relevant in determining whether a duty exists are (1) foreseeability of the injury, (2) magnitude of the burden of guarding against the injury, and (3) desirability or consequence of placing the burden upon the defendant." *Stutz v. Kamm* (1990), 204 Ill. App. 3d 898, 904.

Here, the homeowners rely primarily on *O'Clair v. Dumelle* (N.D. Ill. 1990), 735 F. Supp. 1344, and *Stevens v. Riley* (1991), 219 Ill. App. 3d 823, to argue that they had no duty to Lauren. Both cases are on point.

In *O'Clair*, the three-year-old daughter of a houseguest of the defendant homeowners drowned in the defendants' above-ground pool. The pool was connected to the house by a deck which was accessible through a sliding glass door in the living room. The houseguest was familiar with the home's layout, as she had stayed there before. She also knew that the uncovered pool had water in it, that her daughter could open the sliding glass door if it was not locked and that the door was usually kept unlocked by the defendants. *O'Clair*, 735 F. Supp. at 1345-46.

On the day of the drowning, the defendants left their home to pick up some horses, and they left behind the houseguest, her daughter and a friend of the houseguest. The daughter, whom the houseguest had left in the living room, drowned while the houseguest was talking with her friend in one of the home's bedrooms. The house-

guest had never checked the sliding glass door to see if it was locked prior to leaving her daughter in the living room to watch TV. *O'Clair*, 735 F. Supp. at 1346.

The district court held that, under Illinois law, the defendants owed no duty to the daughter because it was not foreseeable that the houseguest would fail to watch her daughter or prevent her access to the pool by locking the sliding glass door. (*O'Clair*, 735 F. Supp. at 1350-51.) The court noted that its analysis was consistent with other Illinois cases in which children were injured on lands of another while under the supervision of their parents. See *Mooney v. Etheridge* (1978), 65 Ill. App. 3d 847 (girl struck by car after being dropped off by mother for ballet lessons); *Kay v. Ludwick* (1967), 87 Ill. App. 2d 114 (child injured by defendant's power riding mower while under care of mother); *Trotter v. Chicago Housing Authority* (1987), 163 Ill. App. 3d 398 (11-month-old child fell from bed onto uninsulated steam pipe); *Keller v. Mols* (1984), 129 Ill. App. 3d 208 (child injured playing floor hockey at friend's house within sight of parents' home); *Campbell v. Northern Signal Co.* (1981), 103 Ill. App. 3d 154 (child burned while using gasoline at his grandmother's farm while child's mother was in area).

The *O'Clair* court further rebuffed the houseguest's argument that the defendants breached a duty to her daughter by virtue of the pool's condition, specifically that the pool was not properly drained or covered, that the pool ladder was not replaced and that toys were not removed from the pool. (*O'Clair*, 735 F. Supp. at 1346-47, 1351-52.) The court explained that these conditions merely made the girl's drowning possible and that her mother's objectively unforeseeable failure to prevent her daughter from reaching the pool was the proximate cause of the girl's death. *O'Clair*, 735 F. Supp. at 1352, citing *Dunaway v. Ashland Oil, Inc.* (1988), 172 Ill. App. 3d 712.

In *Stevens*, a 17-month-old girl was seriously injured when she fell into a creek behind the defendant homeowners' house. The girl's parents had crossed the street to visit with the defendants and brought their daughter. The girl wandered off unbeknownst to the adults and was found in the creek. (*Stevens*, 219 Ill. App. 3d at 825-27.) This court held that the creek presented an obvious risk to the child even though it was surrounded by tall prairie grass and had a steep bank that suddenly dropped off to the water. (*Stevens*, 219 Ill. App. 3d at 829-34.) The defendants owed no duty to the girl because the girl's parents knew of the creek's existence and the fact that it was partially obscured, and were primarily responsible for watching her. *Stevens*, 219 Ill. App. 3d at 829-34.

*O'Clair* and *Stevens* persuade us that the homeowners under the circumstances presented here owed no duty to protect Lauren from the danger of drowning in the pool. First, bodies of water have long been held to present an obvious danger of drowning, even to children. (See *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316 (water-filled ditch with steep slope presented obvious danger to child); *Prince v. Wolf* (1981), 93 Ill. App. 3d 505 (retention pond with deep water adjacent to shore presented obvious danger).) Second, plaintiff knew of the pool's existence, knew that the stairs to the pool deck were permanent and that Lauren could climb them, knew that the gate to the pool deck was open on earlier occasions that day, and knew that Lauren was playing alone in an area hidden from plaintiff's view and only a short distance from the steps to the pool deck. Moreover, plaintiff testified in her deposition that the homeowners were busy attending to the various party guests and were not devoting their time to watching the children playing in the pool or yard. It was plaintiff's responsibility to make sure that Lauren did not gain access to the pool, and she could have done so by positioning herself in an area from which she could have seen Lauren play in the sand, or by latching the pool gate herself. Under the previously noted factors from *Stutz v. Kamm* (1990), 204 Ill. App. 3d 898, it was not foreseeable that plaintiff would fail to supervise her daughter adequately, and it is more desirable to place the substantial burden of supervising plaintiff's daughter upon plaintiff rather than the homeowners. As in *O'Clair* and *Stevens*, we will not require the homeowners to anticipate negligence on plaintiff's part and guard against it.

Plaintiff argues that, under *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, the question of the obviousness of the danger presented is for the jury to decide and should not be decided as a matter of law. In *Ward*, our supreme court stated, "[T]o the extent that the [obvious danger] rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants, that rule is not the law in this State." (Emphasis in original.) (*Ward*, 136 Ill. 2d at 145.) The court explained that, in negligence cases in which an obvious danger defense is raised, "[t]he inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted *** or forgetful of the [obvious] condition after having momentarily encountered it." (*Ward*, 136 Ill. 2d at 152.) *Ward* also noted that a defendant need not anticipate a plaintiff's negligence. *Ward*, 136 Ill. 2d at 152.

■ *Ward* does not require that a jury pass on the question of obviousness in this case. In *Ward*, a customer encountered a five-foot-high concrete post near a store's door when entering the store and then collided with it on his way out while carrying a large mirror that blocked his view. (*Ward*, 136 Ill. 2d at 136-38.) The customer saw the post only momentarily upon entering the store and was not cognizant of it when he left the store. (*Ward*, 136 Ill. 2d at 137-38.) Here, the pool dominated the homeowners' backyard and presented an obvious risk to plaintiff, if not to Lauren. (See *Corcoran*, 73 Ill. 2d at 327-29 (danger of water-filled ditch was deemed obvious to two-year old).) Notably, *Ward* stated:

"Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid." *Ward*, 136 Ill. 2d at 148, citing *Cope v. Doe* (1984), 102 Ill. 2d 278, 286 (dealing with ice-covered retention pond).

We believe that the homeowners' pool presented such a blatantly apparent danger of drowning that it can be deemed obvious as a matter of law. Thus, a jury was not required to pass on whether the danger encountered here was latent or obvious.

■ Plaintiff next argues that the homeowners voluntarily assumed a duty to make their backyard safe when they installed the pool and sand area, and when they designed and built their own pool deck in derogation of the suggestions in the pool safety manual. We agree with the court in *O'Clair* that defects such as the yard's design, which made it difficult for the plaintiff to see Lauren in the sand area, and defects in the deck, which allowed Lauren to gain access to the water, merely made Lauren's drowning possible. (*O'Clair*, 735 F. Supp. at 1352.) While the homeowners could have done many things which would have prevented this tragedy, the evidence shows that the proximate cause of Lauren's death was her mother's and father's failure to make sure that Lauren did not get into the water. Proximate cause is ordinarily a question for the jury, but it may be decided as a matter of law when "there can be no reasonable differences in the inferences to be drawn by reasonable men from the undisputed facts." (*Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 1078.) Although the homeowners' actions made it possible for Lauren to reach the surface of the pool deck, it is indisputable that plaintiff could have, and should have, prevented Lauren from entering the water. That the yard and pool deck were not

as safe as plaintiff would have had them be does not result in liability being placed on the homeowners under the circumstances in this case.

■■ Finally, plaintiff argues that summary judgment was improper because the homeowners admitted their negligence. At the hospital the day after Lauren was admitted, Dianne Englund, one of the homeowners, told plaintiff, "We just got too relaxed." Plaintiff interpreted this statement to mean that Dianne and Andrew Englund, the homeowners, were the "we" referred to in the assertion and that the homeowners did not take all the precautions necessary to prevent Lauren's injuries. However, in her deposition plaintiff admitted that the "we" in the declaration could have referred to both Dianne Englund, Andrew Englund, and plaintiff and her husband. Dianne Englund never elaborated on the statement.

Even if Dianne Englund's statement referred to Dianne and Andrew, the assertion obviously concerns Lauren's supervision and the fact that Lauren was able to enter the pool undetected. We have previously found that the homeowners did not have the primary duty to watch Lauren, but that plaintiff and her husband did. Thus, even if the homeowners acknowledged that they were lax in their attention to Lauren, this does not relieve plaintiff of her duty to Lauren and does not render the homeowners liable for Lauren's death.

Andrew Englund also admitted in his deposition that he did not follow the advice in the pool safety manual when constructing the pool deck and that he should have locked the gate when the children left the pool. As previously noted, the condition of the pool deck merely made Lauren's death possible; it was not the proximate cause of her drowning. As a consequence, these admissions do not establish liability on the part of the homeowners, either.

In sum, we hold that the homeowners had no duty to prevent Lauren's access to the pool where the plaintiff undertook to watch Lauren and did, in fact, supervise her at the party. The homeowners are not liable for her death, and summary judgment was properly granted to them. The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.